**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch**

Civil Action No. 13-cv-00358-RPM

STEPHEN SCHULER, JR.,

   Plaintiff,

v.

THE UNIVERSITY OF DENVER,

   Defendant.

---

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S FIRST AND THIRD COUNTERCLAIMS AND PLAINTIFF'S SECOND CLAIM FOR RELIEF**

---

In this civil action, Plaintiff Stephen Schuler, a former college student at the University of Denver ("DU"), asserts three claims for relief against DU: (1) disability discrimination under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (2) disability discrimination under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; and (3) retaliation under Section 504 of the Rehabilitation Act, 34 C.F.R. § 100.7(e). [Doc. 1 at 17-21.]

DU brings four counterclaims against Schuler. [Doc. 5 at 9-12.] DU's First and Third Counterclaims seek a declaratory judgment that Schuler and DU reached an enforceable settlement agreement that released Schuler's claims against DU, and recovery for Schuler's alleged breach of the settlement agreement, respectively. [Id.] Schuler has moved for summary judgment on DU's First and Third Counterclaims [Doc. 26], arguing that the parties never reached a "meeting of the minds" on the terms of a settlement agreement. DU

has moved for summary judgment on its First and Third Counterclaims, as well, and on that basis, seeks dismissal of Schuler's lawsuit and an award of attorney's fees and costs it incurred in defending this case. [Doc. 39 at 27-32.]

Schuler's retaliation and discrimination claims are based on conduct that occurred from the time he enrolled at DU in the Fall of 2007 until May of 2012. It is not necessary to consider all of the events at this time. For present purposes, the following undisputed facts are material to the question of whether the parties reached an enforceable settlement agreement.

In June 2012, Schuler began calling the DU Bursar's Office with questions about the holds on his student account and indicated he wanted a copy of his official transcript. Schuler also retained Louise Bouzari as his attorney around that time. [Doc. 39, Statement of Undisputed Material Facts ("SOF") ¶¶ 123-24.]

In July, August, and September 2012, Jim Goh, counsel for DU, and Louise Bouzari exchanged e-mails regarding a settlement of Schuler's potential claims against DU. On July 18, 2012, Bouzari made the following "formal offer to DU" on Schuler's behalf:

> In exchange for mutual releases related to Mr. Schuler's enrollment at DU and Mr. Schuler's agreement not to seek readmittance, DU will: (1) provide Mr. Schuler with a final transcript; and (2) forgive all debt Mr. Schuler owes DU or its schools or subdivisions, whether arising from housing, tuition, fees, or other sources of indebtedness. Mr. Schuler will be responsible for repaying any student loans he may have and each party will bear their own attorney fees.

[Doc. 26-1 at 2.] Bouzari followed up with Goh on August 6, and Goh said he was still waiting to hear from DU as to whether it would accept Schuler's offer. [Id. at 6.] On August 31, 2012, Bouzari e-mailed Goh requesting that DU remove a class grade from Schuler's transcript as a "final requested settlement term." [Id. at 5.] Bouzari stated that she and

Schuler "[hoped] to wrap up the settlement as soon as possible." [Id.] Goh responded that he would check on getting the grade removed, but he was "not optimistic" DU would grant the request. [Id. at 4.]

Bouzari e-mailed Goh on September 17, 2012, stating:

> Mr. Schuler is applying to other universities for spring 2013 admission, and he needs an official transcript by September 24, 2012. Even if we have not finalized a settlement agreement by then, do you think you could facilitate releasing the hold on his official transcript by then? I have made such arrangements with CU before under similar circumstances. This is especially important in order to mitigate Mr. Schuler's ongoing damages.

[Id. at 3.] Four days later, Goh e-mailed Bouzari a draft of a proposed settlement agreement. The draft stated:

> DU agrees to forgive Schuler's indebtedness to the University in the amount of $9,027.49, reflecting unpaid rents. Such debt forgiveness does not apply to any educational loans owed by Schuler to DU or any third parties. DU further agrees to release the hold on Schuler's student records and transcript.
> . . .
> Schuler . . . hereby fully and finally waives, discharges, and unconditionally and irrevocably releases DU . . . from any and all claims and rights of any kind . . . that Schuler may have through the time of the his execution of this Agreement . . . including, but not limited to, claims arising out of or in any way connected with Schuler's matriculation at, and/or withdrawal from, University of Denver.

[Id. at 9-14.] Bouzari e-mailed Goh on September 24 and said:

> I have reviewed the draft settlement agreement with Mr. Schuler, and we have an agreement in principle. I will send you proposed changes this afternoon or tomorrow. Please let me know when the hold on Mr. Schuler's transcript has been removed.

[Doc. 26-2 at 3.] A little over an hour later, Goh e-mailed Bouzari back and said "[t]he hold should now be lifted." [Id.]

DU does not release transcript holds for individuals who owe a balance to DU or who have had an unpaid balance written off. When a balance is written off, DU places a

3

permanent hold on the student's records.[1] Goh states in an affidavit that DU only removed the hold because it was relying on Bouzari's statement that they had reached an agreement.[2] DU also ceased collection efforts on the roughly $9,000 Schuler owed. [SOF ¶¶ 131, 134, 137.][3]

Bouzari sent Goh proposed redline changes to the draft settlement agreement on September 26. There were no material changes made to Schuler's agreement to release his claims against DU or to DU's agreement to forgive Schuler's student housing debt and release its hold on his record. Bouzari modified the agreement's confidentiality and non-disparagement provisions, which previously only obligated Schuler to keep the settlement confidential and not disparage DU, to include an obligation that DU keep the settlement confidential and not disparage Schuler, either. [Doc. 26-2 at 8.]

Bouzari e-mailed Goh on October 8, saying: "We still need to finalize the settlement agreement. Have you gotten feedback from your client regarding the changes I sent you last month []? Please let me know. Thanks." [Id. at 13.]

Goh responded to Bouzari on October 16 and stated that DU was "fine" with her proposed changes, except that it:

> [w]ill not agree to mutuality in the Confidentiality and Non-Disparagement clauses. Obviously, DU cannot police and control what individuals say or what opinions they have. With respect to what DU employees do in their official capacity there already exist laws, like [the Family Educational Rights and Privacy Act ("FERPA")], that will protect

---

[1] Schuler denies that DU has such a policy but does not support that assertion with record evidence. [See Doc. 53 ¶ 131.]

[2] Schuler disputes this assertion but does not provide record evidence in support of his view that DU lifted the hold in part to limit its exposure to Schuler's damages and out of old-fashioned professional courtesy. [See Doc. 53 ¶ 134.]

[3] Schuler denies, without record evidence, that DU ceased all collection efforts. [See Doc. 53 ¶ 134.] Beyond being a flat denial, Schuler's statement is contradicted by his subsequent admissions in paragraphs 138 and 139 that he has not received any more bills from DU, he has not received any telephone calls from debt collectors, and that Bouzari, his attorney, is not aware of any efforts by DU outside of this litigation to collect the money he owed since September 2012. [Id. ¶¶ 138-39.]

> Schuler. These clauses are in place because DU does not have corresponding protections, and that is a major part of what it is buying with this settlement.
>
> If you are fine with these latest revisions, please accept all changes and sign. Thanks.

[Doc. 26-3 at 2.] The draft Goh sent to Bouzari eliminated the confidentiality and non-disparagement obligations that Bouzari sought to impose on DU in her September 26 draft. [See id. at 5.]

On October 22, Goh e-mailed Bouzari and asked her about the status of the written agreement. Bouzari sent an updated version that day. In her transmittal e-mail, she said:

> I have modified the language regarding the Parties' duty of confidentiality and nondisparagement. I think you misspeak when you say that these protections are a major part of what DU is buying with this settlement. The main thing DU is getting with this settlement is assurance that Mr. Schuler will not prevail on an ADA & 504 suit against it. I trust that the way that I have modified these provisions will be satisfactory to your client. Mr. Schuler has no intention of publicly speaking about the settlement or about his dispute with DU, but he does in fact have concern that DU officials could misuse information about him, either intentionally or unintentionally. Hopefully this new language will satisfy your concern about the practical issues with monitoring the personal activities of DU employees as well as DU's ability to know if Mr. Schuler is abiding by these provisions.

[Doc. 26-3 at 10-11.] Bouzari added language in the October 22 draft making explicit that the Agreement was confidential and subject to FERPA and imposed a non-disparagement obligation on DU employees acting in their official capacities. [Id. at 14-15.]

Three days later, Bouzari e-mailed Goh stating that even under the most conservative calculation, the statute of limitations on Schuler's claims would run the next day. Bouzari specifically stated: "I will accept your agreement to toll the statute of limitations until our clients execute the settlement agreement that we have reached in principle earlier . . . . Otherwise, I will need to file an ADA and 504 complaint on Mr. Schuler's behalf tomorrow . . . ." [Doc. 26-4 at 2.] Goh responded later that day, stating: "I agree to the tolling. I will

get back to you on the draft agreement early next week." [Id. at 4.] Bouzari replied: "I'm glad we still have a deal." [Id. at 5.]

On November 30, 2012, Bouzari e-mailed Goh and said "[w]e need to wrap up this settlement." [Doc. 26-4 at 7.] Bouzari asked whether DU had agreed to her October 22 revisions and also stated Schuler had some additional minor revisions. Goh replied that day that he had "forgotten where [they] left off" and asked her to resend the October 22 draft so he could send it to DU for review. [Id. at 8.]

On December 7, 2012, Bouzari forwarded the October 22 draft to Goh with some "additional changes" that "d[id] not pertain to DU." [Doc. 26-5 at 2.] Bouzari's additional changes clarified that Schuler was not releasing any claims against others. Bouzari also stated she "would like to reach closure on this by next week at the latest, since we reached agreement in principle so long ago." [Id.]

Bouzari sent Goh an e-mail on December 17, stating as follows:

> Another week has passed and I still have not heard back from you on this matter. The time that it has taken to finalize this settlement after drafts began to be exchanged between counsel is by far the longest that I have had in my career. If closure is not reached to Mr. Schuler's satisfaction and a settlement agreement is not signed by all parties before January 1, 2013, we will return to pursuing Mr. Schuler's claims in federal district court.
>
> If your client has no changes to the attached draft, please let me know so that it can be finalized and executed without further delay. If DU has reasonable changes, I need to review them as soon as possible so that closure can be reached. The emotional distress that Mr. Schuler sustained at the University of Denver's hands continues as long as this matter remains open.

[Id. at 10.] Another ten days passed without communication from Goh. On December 27, 2012, Bouzari sent an email to Goh regarding the "urgency" of finalizing the written agreement and stated she needed to see proposed changes by the next day. Bouzari's email

6

described the status of the settlement as "paper[ing] an agreement that we reached in principle months ago." [Id. at 12.] That day, Goh responded to Bouzari and said: "I sent you the original agreement months ago. Sign that [agreement] and we are all done. But if you want DU to approve your edits, it'll be another week or so because DU is closed for the holidays." [Doc. 26-6 at 2.] Bouzari agreed to extend her deadline to January 4th, 2013 and stated that if an agreement was "not signed by then we will file suit in federal district court . . . ." [Id. at 6.]

Goh sent a revised draft of the settlement agreement to Bouzari on January 4, 2013. The new draft clarified that DU would comply with FERPA and made it explicit that if Schuler reapplied to DU, it would be a breach of the parties' agreement; and also expanded the scope of the language pertaining to Schuler's release to include "all claims" against DU, not just those related to Schuler's matriculation and withdrawal. [Doc. 26-7 at 3-7.] Goh stated that "DU does not agree to [Schuler's] limitation" in the claim release language. [Id. at 2.]

There is no record evidence from this point on showing further discussion or negotiation between Goh and Bouzari. The parties never executed a written settlement agreement.

Sometime in January 2013, Schuler learned that he had used up almost all of his federal and state financial aid. He filed his Complaint against DU on February 8, 2013. [Doc. 1.]

According to DU, its counsel, Jim Goh, and counsel for Schuler, Louise Bouzari, reached a binding and enforceable settlement agreement in September 2012. [Doc. 39 at 30.] "Whether a contract exists is a question of fact to be determined in light of all the surrounding circumstances." Yaekle v. Andrews, 195 P.3d 1101, 1108 (Colo. 2008). Under Colorado law, a settlement agreement does not need to be finalized in writing to be enforceable. In re Custody of Nugent, 955 P.2d 584, 589 (Colo. App. 1997). As long as the

7

parties reached a "meeting of the minds" on the agreement's essential terms, the agreement is binding even if a formal document has been contemplated but not prepared by the parties. Siribuor v. UHS of Denver, Inc., No. 12-cv-0077-RBJ, 2012 WL 3590793, at *3 (D. Colo. Aug. 12, 2012).  Although a party is not bound by an oral agreement if it does not intend to be bound until a formal document is executed, the party arguing that the parties intended not to be bound until the execution of a formal writing has the burden of proving either:  (1) that both parties understood they were not to be bound until the executed contract was delivered; or (2) that the other party should have known that the disclaiming party did not intend to be bound before the contract was signed.  City and County of Denver v. Adolph Coors Co., 813 F. Supp. 1476, 1481 (D. Colo. 1993) (quoting PDL Vitari Corp. v. Olympus Indus., Inc., 718 F. Supp. 197, 206 (S.D.N.Y. 1989)).

It is clear that DU did not understand that Schuler did not intend to be bound until a formal written agreement was executed.  As to whether DU should have known that Schuler did not intend to be bound, the Court must consider whether:  (1) the parties stated an intention not to be bound absent an executed writing; (2) one party performed partially and the other party accepted such performance; (3) there were no issues left to be negotiated such that the signing of the contract was merely ministerial, and (4) whether the agreement concerns complex matters such that a written agreement would be the norm, not the exception.  See id.

The second Coors factor weighs in DU's favor, as it substantially performed its end of the agreement by releasing the hold on Schuler's transcript and suspending its efforts to collect Schuler's debt (if not cancelling Schuler's debt entirely).  The remaining three Coors factors go the other way.  Bouzari's words and conduct in trying to execute a formal written

8

agreement -- including her request that Goh toll the statute of limitations pending a formal agreement, and her stated plan to go to court if an agreement was not executed -- manifested an intent not to be bound absent a signed writing. In those circumstances, Bouzari's statements about having an "agreement in principle" and "a deal" are reasonably understood as agreements to agree. The parties' back and forth over the agreement's confidentiality and non-disparagement provisions, as well as the language concerning Schuler's claims release, demonstrates that there were issues left to be negotiated. DU's position that those issues were non-essential is belied by the fact that Bouzari felt the language warranted changing and Goh felt it important enough to object to the changes, thus holding up any progress towards an agreement. Finally, this type of agreement—settlement of a lawsuit and mutual releases—is typically reduced to writing.

The exchanges between counsel recited above show that there were unresolved issues as to the terms of the proposed settlement. It follows that Schuler's disability discrimination and retaliation claims were not released and are now before this Court.

Schuler's discrimination claim under Title III of the ADA can be quickly disposed of, however, because Title III "provides for only injunctive relief and not compensatory damages." Rhodes v. Southern Nazarene Univ., 554 Fed. Appx. 685, 690 (10th Cir. 2014) (citing 42 U.S.C. § 12188(a)(1)); see also Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004) ("A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages."). The thrust of Schuler's ADA claim is that:

> As a direct and proximate result of Defendant's violation of the ADA, Mr. Schuler has suffered, continues to suffer, and will suffer in the future injuries to his person, including but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, damage

to his personal relations, and economic damage in amounts to be ascertained according to proof at trial.

[Doc. 1 ¶ 64.] Schuler cannot recover damages for Defendant's alleged violation of the ADA. See Rhodes, 554 Fed. Appx. at 690. Assuming Schuler is seeking injunctive relief under the ADA, it is clear that Schuler is premising his claim on alleged past discrimination, as opposed to ongoing discrimination or discrimination that is likely to recur in the future. It is likewise clear that Schuler has not attended DU since the fall of 2010 and does not intend to re-enroll there. There is nothing to suggest that he faces an immediate threat of future ADA-related injury at DU's hands. Schuler's ADA Title III claim is moot to the extent Schuler seeks injunctive relief; therefore, the Court lacks jurisdiction to hear it. See Phillips v. Tiona, 508 Fed. Appx. 737, 754 (10th Cir. 2013) ("Because [plaintiff's] sole remedy for a Title III claim is injunctive relief, and he alleged only past exposure to ADA violations, we perceive no error" in district court's dismissal of claim on basis that "court lacked jurisdiction").

Upon the foregoing, it is

ORDERED that Plaintiff's Motion for Partial Summary Judgment on Defendant's First & Third Counterclaims [Doc. 26] is granted; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment [Doc. 39] is denied as to Defendants' First and Third Counterclaims; and it is

FURTHER ORDERED that Defendant's First and Third Counterclaims [Doc. 5 at 10-12] are dismissed; and it is;

FURTHER ORDERED that Plaintiff's Second Claim for Relief is dismissed, *sua sponte*. Plaintiff's First and Third Claims for Relief and Defendant's Second and Fourth

Counterclaims will be the subject of a motions hearing to be held at a time to be set after conferring with counsel.

Dated: August 15, 2014.

                                                BY THE COURT:

                                                s/Richard P. Matsch
                                                _____
                                                Richard P. Matsch
                                                Senior District Judge